UNITED STATES of America,
Plaintiff-Appellee,

v.

**Abel V. QUIJADA, Defendant-Appellant.**

No. 78–1514.

United States Court of Appeals,
Ninth Circuit.

Nov. 2, 1978.

Rehearing and Rehearing En Banc
Denied Jan. 4, 1979.

Paul T. Willis, Tucson, Ariz., for defendant-appellant.

Dale A. Danneman, Asst. U. S. Atty. (argued), Tucson, Ariz., for plaintiff-appellee.

Before CHOY and SNEED, Circuit Judges, and SPENCER M. WILLIAMS,* District Judge.

SNEED, Circuit Judge:

Appellant Abel V. Quijada was convicted of attempt to distribute cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 846. This appeal presents an issue of first impression in this circuit: Whether an individual may be convicted of an attempt to distribute cocaine when the substance he offers to sell is a noncontrolled substance rather than cocaine. Under the circumstances of this case, we conclude that he may. We, therefore, affirm.

Appellant and one James Lewis, an informant for the Drug Enforcement Administration, negotiated the sale and delivery of eight ounces of "snow." The discussions took place over a three-day period during which the two men met three times and spoke on the telephone once. Appellant indicated several times that he had the "stuff" and delivered a sample of the substance to Lewis at their second meeting. When Lewis introduced appellant to Jim Stevenson, an undercover agent for the Arizona Department of Public Safety, appellant again said that he had the "stuff." At the time of the sale, Stevenson performed a common chemical field test on the substance which indicated that it was cocaine.

Appellant was arrested and charged with distribution of cocaine. A subsequent laboratory analysis of the substance revealed it to be lidocaine hydrochloride, which resembles cocaine, but is not a controlled substance. Appellant was then indicted for attempting to distribute cocaine and found guilty by a jury at his third trial; the two earlier trials resulted in mistrials because the juries failed to reach unanimous verdicts.

In this the third trial the jury was charged in part as follows:

The elements of an attempt to commit a crime are: first, the specific intent to commit the crime charged; second, the execution of some overt act in pursuance of such intent; and third, a failure to consummate a crime for some reason.

An overt act, as that term is used in these instructions, means any act knowingly or willfully committed in an effort to accomplish the intended crime. If you find, beyond a reasonable doubt, that Abel V. Quijada knowingly and intentionally attempted to distribute cocaine, it is no defense that the substance he distributed was not cocaine.

On the other hand, if you do not find beyond a reasonable doubt that the defendant believed the substance involved to be cocaine even though you might find all of the other elements of the offense present beyond a reasonable doubt, then it would be your duty to acquit the defendant. This is because he had to have the state of mind and the evidence must establish beyond a reasonable doubt that he had the state of mind to intend to distribute cocaine.

The jury's verdict indicates that it found beyond a reasonable doubt that the appellant intended to distribute cocaine.

Appellant contends that the conviction cannot stand because the substance he sold was not, in fact, cocaine. He relies primarily upon *United States v. Oviedo*, 525 F.2d 881 (5th Cir. 1976) and *United States v. Berrigan*, 482 F.2d 171 (3d Cir. 1973).[1] The

---

* Hon. Spencer M. Williams, United States District Judge for the Northern District of California, sitting by designation.

1. In *Berrigan*, the defendants were charged with attempting to smuggle letters in and out of a federal correctional institution. Because the warden was aware of the smuggling scheme and because lack of knowledge was an essential element of the offense, the court reversed the convictions, stating that "attempting to do that which is not a crime is not attempting to commit a crime." 482 F.2d at 190. In *Oviedo*, the defendant was convicted of attempting to distribute heroin after he sold a substance he thought to be heroin, but which was, in fact, an uncontrolled substance. The court reversed the conviction and employed an analysis that requires criminal intent plus objective acts which corroborate the *mens rea*. Corroboration by objective facts is required to prevent conviction on the basis of criminal intent only. 525 F.2d at 884–85. The *Oviedo* decision subsequently was described by anoth-

government, on the other hand, relies on *United States v. Heng Awkak Roman,* 356 F.Supp. 434 (S.D.N.Y.), *aff'd,* 484 F.2d 1271 (2d Cir. 1973), *cert. denied,* 415 U.S. 978, 94 S.Ct. 1565, 39 L.Ed.2d 874 (1974). The reliance of neither is misplaced; the cases do tend to support their respective positions. Being forced to choose, we select *Roman* as the authority upon which we rest our decision.

■ In that case government agents surreptitiously replaced heroin in the defendants' suitcase with soap powder. Thinking the suitcase still contained heroin, the defendants attempted to sell the substance. The court found that the defense was one of *factual* impossibility, but further held that "however this impossibility may be characterized," the evidence of criminal intent was sufficient to convict defendants on the charge of attempted possession with intent to distribute heroin and, "since the defendants' objective here was criminal, impossibility is no defense." 356 F.Supp. at 438. Because the evidence supports the jury's implied finding that the defendant intended to distribute cocaine, a criminal objective, impossibility is here also no defense.

In a case such as this it is tempting to go beyond merely deciding the case and to undertake an analysis in depth of the applicable doctrine which in this instance is that of the defense of impossibility. We resist, however, confident that the existing literature provides the required guidance. Of particular assistance to us was Judge Bryan's opinion in *Roman,* 356 F.Supp. 434, and Wechsler, Jones, and Korn, *The Treatment of Inchoate Crimes In The Model Penal Code Of The American Law Institute: Attempt, Solicitation, and Conspiracy,* 61 Colum.L.Rev. 571, 578–85 (1961). Specifically, we eschew any effort to distinguish so-called *legal* impossibility from *factual* impossibility or to establish any general

principles capable of solving most, if not all, instances in which the defense is raised. We can only say that generally a defendant should be treated in accordance with the facts as he supposed them to be. The fact that the pocket was empty should not insulate the pickpocket from prosecution for an attempt to steal. *See* Wechsler, Jones, and Korn, *supra* at 580 n.35. Proof of what a defendant supposed the facts to be, of course, must be established beyond a reasonable doubt; but that clearly was accomplished in this case.

■ We have examined the appellant's other assertions of error and find none of them meritorious. We feel it to be unnecessary to discuss each in detail. Only with respect to appellant's contention that to subject him to three trials is a denial of due process should we write a few words. The two previous mistrials were properly declared. A third trial following such mistrials does not constitute double jeopardy. *See United States v. Gunter,* 546 F.2d 861, 866 (10th Cir. 1976), *cert. denied,* 430 U.S. 947, 97 S.Ct. 1583, 51 L.Ed.2d 794 (1977); *United States v. Berniker,* 439 F.2d 686, 687 (9th Cir.), *cert. denied,* 404 U.S. 938, 92 S.Ct. 277, 30 L.Ed.2d 250 (1971). Nor should it, in the absence of a strong showing of harassment, deprive appellant of due process.

AFFIRMED.

---

er panel of the Fifth Circuit as "a narrow one, resting in great part on the court's apprehensions of baseless jury speculation about intent where defendant's objective acts are equivocal." *United States v. Hough,* 561 F.2d 594, 596 (5th Cir. 1977). *See also United States v.*

*Korn,* 557 F.2d 1089, 1091 (5th Cir. 1977) where the court observed that *Oviedo* did not hold that "transfer of a noncontrolled substance was a determinative factor which automatically canceled out any possible liability. . . . . "