**Cameron STRATTON, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

**No. 12A04–0206–CR–288.**

Court of Appeals of Indiana.

July 9, 2003.

Jeffrey P. Little, Power, Little & Little Frankfort, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Nandita G. Shepherd, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

RILEY, Judge.

### STATEMENT OF THE CASE

Appellant–Defendant, Cameron Stratton (Stratton), appeals from the trial court's denial of his motion to dismiss.

We affirm.

### ISSUE

Stratton raises one issue on appeal, which we restate as follows: whether the trial court properly denied his motion to dismiss.

### FACTS AND PROCEDURAL HISTORY

Initially, Stratton was hired as a social pastor for the Living Word Ministries Center. Frankfort Heritage Christian School was associated with the Living Word Ministries Center. Specifically, Frankfort Heritage Christian School was founded and run by the Living Word Ministries Center. Frankfort Heritage Christian School is a private, non-accredited school for kindergarten through twelfth grade students.

On April 12, 2000, a meeting of the Board of Directors for the Living Word Ministries Center was held. The minutes from this meeting show that in order to reduce the workload of Pastor Carol Fitch, Pat Presse became the Principal of Frankfort Heritage and Stratton became the Dean of Students of Frankfort Heritage Christian School. Pastor Carol Fitch became the Administrator of Frankfort Heritage Christian School. At this meeting, a motion also was passed to formulate a non-voting advisory board for Frankfort Heritage Christian School that dealt with discipline issues with the students. The Administrator, Principal, and Dean of Students of Frankfort Heritage Christian School were made permanent members of this advisory board. The other members consisted of a Frankfort Heritage Christian School teacher, three parents, and the Parent–Teacher Fellowship President.

As Dean of Students for Frankfort Christian Heritage School, Stratton's primary responsibility was to deal with disciplinary problems and behavioral issues. When a student required more attention than the principal was able to provide due to a disruption in the classroom or a behavioral problem, the student was sent to Stratton. Stratton was able to designate any discipline he thought was appropriate. Then, Stratton was required to report the disciplinary actions to the advisory board. If Stratton believed that further counseling was needed for a student, he sent home a form requesting parental permission for Stratton to counsel the student.

On March 16, 2001, the State filed an information against Stratton charging him with two counts of child seduction, Class D felonies, Ind.Code § 35–42–4–7.[1] On Au-

---

1. We note that the charging information was    not included in the Appellant's Appendix.

gust 13, 2001, Stratton filed a Motion to Dismiss stating that he was not an employee of Frankfort Christian Heritage School but an employee of the Living Word Ministry Center. On October 4, 2001, the trial court held a hearing on the motion to dismiss. After hearing evidence on the motion, the trial court took the matter under advisement. On October 24, 2001, the trial court denied the motion to dismiss. On May 3, 2002, Stratton filed another Motion to Dismiss asserting that Frankfort Heritage Christian School was not a public or private school under I.C. § 35–42–4–7(c). Stratton also claimed that he was not a "child care worker" under I.C. § 35–42–4–7 and, thus, he was improperly charged. On May 10, 2002, a hearing was held on the motion to dismiss. On May 16, 2002, Stratton filed a supplemental brief in support of the motion to dismiss. However, on May 17, 2002, the trial court denied his Motion to Dismiss. In its Order, the trial court stated, in pertinent part, the following:

> The Court having heard evidence and taking the matter under advisement now finds that [Stratton] was on the advisory board establishing the disciplinary rules and was in charge of discipline in accordance with the established rules. [Stratton] supervised students in detention who were sent to him for disciplinary problems. Within such rules, [Stratton] had the discretion to make decisions without checking with [Pastor Carol Fitch]. [Stratton's] motion to dismiss is denied.

(Appellant's Appendix p. 9).

On May 21, 2002, Stratton filed a Motion for Interlocutory Appeal and Certification of Interlocutory Order. The trial court granted this motion on the same date. On August 27, 2002, this court accepted jurisdiction of Stratton's appeal. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

■ Stratton argues that the trial court improperly denied his motion to dismiss. Specifically, Stratton maintains that he was not a "child care worker" as defined by I.C. § 35–42–4–7(c). We disagree.

■ Indiana Code § 35–34–1–4 provides for the dismissal of an information on "any other ground that is a basis for dismissal as a matter of law." *See* I.C. § 35–34–1–4(a)(11). Generally, when a defendant files a motion to dismiss an information, the facts alleged in the information are to be taken as true. *State v. D.M.Z.*, 674 N.E.2d 585, 587 (Ind.Ct.App.1996), *trans. denied.* A trial court considering a motion to dismiss in a criminal case need not rely entirely on the text of the charging information but can hear and consider evidence in determining whether or not a defendant can be charged with the crime alleged. *See* I.C. § 35–34–1–8. It is a function of the prosecuting attorney to make certain that a person is not erroneously charged. *State v. Gillespie*, 428 N.E.2d 1338, 1339 (Ind.Ct.App.1981). In considering a motion to dismiss, the trial court has that same obligation. *Id.*

■ In the instant case, the State properly charged Stratton as a "child care worker" under I.C. § 35–42–4–7(c). Only when a statute is ambiguous is it susceptible to judicial interpretation. *Sullivan v. Day*, 661 N.E.2d 848, 853 (Ind.Ct.App. 1996). Here, the statute defines "child care worker" as a "person who provides care or supervision of a child within the scope of the person's employment in a

---

The Chronological Case Summary was the only source of information for the charges filed by the State against Stratton.

public or private school or shelter care facility." *See* I.C. § 35–42–4–7(c). When the legislature defines a word, the courts are bound by that definition. *D.M.Z.*, 674 N.E.2d at 588. There is no judicial interpretation unless there is ambiguity within the statute. *Id.* Because I.C. § 35–42–4–7(c) is a penal statute, the term, "child care worker," is to be strictly construed against the State. Any ambiguity must be resolved against imposing the penalty, and only those cases, which are clearly within its meaning and intention, can be brought within the statute. *D.M.Z.*, 674 N.E.2d at 588.

In particular, Stratton claims that he did not provide "care or supervision" as required by the definition of "child care worker" under I.C. § 35–42–4–7(c). However, under I.C. § 1–1–4–1(1), this court gives undefined words in a statute their plain, ordinary, and usual meaning. Courts may consult English language dictionaries to ascertain the plain and ordinary meaning of a statutory term. *Id.* The meaning of doubtful words may also be determined by reference to their relationship with other associate words and phrases. *Id.* Therefore, we may determine the legislature's intent by defining a word by its association with other words in the statute. *Id.*

The dictionary defines "care" as "charge, supervision, or management." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY at 338 (1993). "Supervision" is defined as "the act, process or occupation of supervising: direction, inspection, and critical evaluation." *Id.* at 2296. In *D.M.Z.*, this court considered the term "custodian" as used in I.C. § 35–42–4–7. *See D.M.Z.*, 674 N.E.2d at 589. We found that because "custodian" was used together with "guardian," "adoptive parent," and "stepparent," the legislature intended "custodian" to mean an individual who occupies a position of trust, authority, and responsibility *in loco parentis*. *Id.* The term "child care worker" was added to the statute on January 1, 2001 and Stratton was charged on March 16, 2001. Under the *D.M.Z.* analysis, we find that the legislature also intended "child care worker" to mean an individual who occupies a position of trust, authority, and responsibility *in loco parentis*. *See id.*

As stated above, Stratton was the Dean of Students at Frankfort Heritage Christian School. Under this title, Stratton's primary responsibility was to handle the disciplinary matters of the students. Stratton was able to render any punishment that he determined necessary and appropriate without consulting anyone of higher authority. However, Stratton was required to report his punishment decisions to the advisory board. Clearly, Stratton was able to discipline Frankfort Heritage Christian School students like a parent. Therefore, we find that Stratton provided care and supervision within the meaning of I.C. § 35–42–4–7(c). The interpretation of a statute is not a question of fact but one of law reserved for the trial court. *Robinson v. Zeedyk*, 625 N.E.2d 1249, 1251 (Ind.Ct.App.1993), *trans. denied.* Here, the trial court accepted all the material facts in the information as true and concluded that, as a matter of law, Stratton was a "child care worker" within the meaning of the child seduction statute. Thus, we find the trial court properly denied Stratton's motion to dismiss. *See* I.C. § 35–34–1–8; *D.M.Z.*, 674 N.E.2d at 587.

Additionally, Stratton argues that the charges against him are invalid because he was not employed by Frankfort Heritage Christian School, but rather by Living Word Ministries Center. We find that this argument lacks merit. Although the record indicates that Stratton was paid by

Living Word Ministries Center, the record also shows that the scope of Stratton's employment covered his duties as social pastor of the Living Word Ministries Center and his duties as Dean of Students of Frankfort Heritage Christian School. Specifically, the minutes from the Board of Directors meeting reveal that Stratton accepted the Dean of Students position in April of 2000 and an increase in pay. The increase in pay may not have been related to the new position, but the evidence supports the finding that Stratton worked as both Social Pastor and Dean of Students at the school. Accordingly, we find that Stratton is a "child care worker" as defined by I.C. § 35–42–4–7(c).

## CONCLUSION

Based on the foregoing, we conclude that the trial court properly denied Stratton's motion to dismiss.

Affirmed.

SHARPNACK, J., and BARNES, J., concur.