## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Dec 29 2017, 11:38 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Thomas C. Allen
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

James B. Martin
Deputy Attorney General
Indianapolis, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Kevin D. Hamilton,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff.* | December 29, 2017<br><br>Court of Appeals Case No.<br>02A03-1704-CR-932<br><br>Appeal from the<br>Allen Superior Court<br><br>The Honorable<br>Frances C. Gull, Judge<br><br>Trial Court Cause No.<br>02D06-l608-MR-5 |

**Kirsch, Judge.**

[1] Kevin D. Hamilton ("Hamilton") was convicted after a jury trial of murder,[1] Level 2 felony robbery,[2] and an enhancement for use of a firearm in the commission of a felony.[3] On appeal, he raises the following restated issues:

> I. Whether the trial court erred in merging Hamilton's felony murder conviction with his murder conviction;
>
> II. Whether reducing Hamilton's conviction from Level 2 felony robbery to Level 3 felony robbery for purposes of sentencing remedied double jeopardy violations under Indiana's Double Jeopardy Clause; and
>
> III. Whether the trial court erred by allowing the jury to hear evidence on the enhancement—use of a firearm in the commission of an offense causing death or serious bodily injury—at the same time the jury heard evidence on the other counts.

[2] We affirm.

## Facts and Procedural History

[3] On August 13, 2016, Hamilton and his friend, Devyn Yancey ("Yancey"), were exchanging text messages regarding the fact that marijuana they had purchased from Brian Quintana ("Quintana") was ten grams short. Hamilton and Yancey decided to rob Quintana the next day, during an arranged buy. Via text,

---

[1] *See* Ind. Code § 35-42-1-1(1).

[2] *See* Ind. Code § 35-42-5-1(1)(a).

[3] *See* Ind. Code § 35-50-2-11.

Yancey assured Hamilton that Quintana would have only one person with him, if anyone, and that no one would be armed. *Tr. Vol. 3* at 138-39. Hamilton said he would bring his .9-millimeter handgun. Referring to the robbery, Hamilton texted, "Sounds easy. Let's do it." *Id.* at 139.

[4] On August 14, 2016, Hamilton picked up Yancey, and they drove to the parking lot of the Woodbridge Apartments in Allen County, where Quintana was waiting in his car. Yancey and Hamilton entered Quintana's car; Yancey sat in the passenger seat, and Hamilton, brandishing his gun, sat in the back. Seeing the handgun, and understanding that he was being robbed, Quintana tried to wrestle the gun out of Hamilton's hand. Yancey went around to the driver's side door and started hitting Quintana. This allowed Hamilton to secure his gun and exit the car. As Yancey and Quintana continued to struggle in the front seat of the car, Hamilton fired his gun through the back windshield, striking Quintana in the right lower chest. Yancey grabbed a bag of Quintana's marijuana, and he and Hamilton fled from the scene.

[5] When police arrived at the scene, Quintana told them that Hamilton had shot him. Following a search, police tracked down Hamilton and arrested him. Quintana died from his injuries, and on August 18, 2016, Hamilton was charged with murder, felony murder, robbery as a Level 2 felony, and an enhancement for use of a firearm in the commission of a felony. A jury trial was conducted from March 7 through 9, 2017. Following the trial, and without reconvening to prove the enhancement, Hamilton was found guilty of all charges.

At the August 11, 2017 sentencing hearing, the trial court said:

> [T]he Court now finds the Defendant guilty of Murder, a Felony in Count I, order[s] that Count II merges into Count I. Um, on Count III, Robbery, it was originally charged as a Level 2 Felony. The Court orders that reduced, to a Level 3 Felony, for the Use of The Weapon, removing the Serious Bodily Injury. And Count IV, Use of a Firearm in the Commission of the Offense as Charged.

*Sent. Tr*. at 13. The trial court sentenced Hamilton as follows:

> It is therefore ordered that [Hamilton] be committed to the Indiana Department of Correction for classification and confinement for a period of fifty-five (55) on Count I, a period of nine (9) years on Count III, and ten (10) years on Count IV; order those all to be served consecutively for a net sentence of seventy-four (74) years in the Department of Correction . . . .

*Id*. at 15. Hamilton now appeals.

# Discussion and Decision

## I.  Double Jeopardy - Merging Counts

After the jury returned guilty verdicts on Counts I and II, murder and felony murder respectively, the trial court merged Count II into Count I. Hamilton argues that the trial court erred when it improperly merged his felony murder count with his murder count. Specifically, he contends that a violation of double jeopardy principles cannot be cured without vacating the felony murder conviction, and therefore, the instant case should be remanded with orders to vacate the felony murder conviction. *Appellant's Br*. at 14 (citing *Morrison v.*

*State*, 824 N.E.2d 734, 741-742 (Ind. Ct. App. 2005), *trans. denied; Gregory v. State*, 885 N.E.2d 697, 703 (Ind. Ct. App. 2008), *trans. denied*).

[8] Indiana's Double Jeopardy Clause states, "No person shall be put in jeopardy twice for the same offense." Ind. Const. art. 1, § 14. "This clause yields three protections: (1) protection from reprosecution for the same offense after an acquittal; (2) protection from reprosecution for the same offense after conviction; and (3) protection from multiple punishments for the same offense." *Laux v. State*, 821 N.E.2d 816, 819 (Ind. 2005) (internal citations and quotations omitted). Regarding the third protection, Indiana appellate courts have addressed the issue of merger as follows:

> To be sure, a defendant's constitutional rights are violated when a court enters judgment twice for the same offense, but not when a defendant is simply found guilty of a particular count.
>
> On the other hand, a merged offense for which a defendant is found guilty, but on which there is neither a judgment nor a sentence, is "unproblematic" as far as double jeopardy is concerned. In *Laux, [*821 N.E.2d at 820 n.4,] we disapproved those cases which indicate that vacating a jury verdict is the appropriate remedy rather than merger and entering a judgment of conviction only on the merged count.

*Green v. State*, 856 N.E.2d 703, 704 (Ind. 2006) (internal citations and quotations omitted); *Wilson v. State*, 39 N.E.3d 705, 717-18 (Ind. Ct. App. 2015), *trans. denied*.

[9] Although the jury found Hamilton guilty of murder and felony murder, the Abstract of Judgment clearly shows that the trial court did not enter judgment of conviction or sentence him for felony murder. *See Appellant's App. Vol. II* at 125-26. In *Wilson*, we held, "Because the felony-murder count was merged, rather than reduced to judgment, and [defendant] was never sentenced for felony murder, we find no double-jeopardy violation." *Wilson*, 39 N.E.3d at 718. Pursuant to our reasoning in *Wilson*, the trial court did not err when it merged Hamilton's felony murder count with his murder count instead of vacating his felony murder count.

## II. Double Jeopardy - Robbery

[10] Hamilton next contends that his convictions for murder and Level 3 felony robbery violate double jeopardy principles and, therefore, barred the trial court from entering a conviction and sentencing him for Level 3 felony robbery. "[T]wo or more offenses are the 'same offense' in violation of Article I, Section 14 of the Indiana Constitution, if, with respect to either the statutory elements of the challenged crimes or the actual evidence used to convict, the essential elements of one challenged offense also establish the essential elements of another challenged offense." *Anthony v. State*, 56 N.E.3d 705, 715 (Ind. Ct. App. 2016), *trans. denied* (quoting *Richardson v. State*, 717 N.E.2d 32, 49 (Ind. 1999)).

[11] Indiana Code section 35-42-5-1(a), defining robbery, provides:

[A] person who knowingly or intentionally takes property from another person or from the presence of another person:

(1) by using or threatening the use of force on any person; or

(2) by putting any person in fear;

commits robbery, a Level 5 felony. However, the offense is a Level 3 felony if it is committed while armed with a deadly weapon or results in bodily injury to any person other than a defendant, and a Level 2 felony if it results in serious bodily injury to any person other than a defendant.[4]

Ind. Code § 35-42-5-1(a). Hamilton was charged with, and the jury found him guilty of, Level 2 felony robbery because the act resulted in serious bodily injury. The State recognized that the same serious bodily injury could not be used to prove an element for both robbery and murder and addressed the trial court saying:

Your Honor, as it relates to Count III, the Robbery, which was charged as Level 2, the State is asking that that be reduced to a Level 3, While Armed with A Deadly Weapon, thereby removing the Serious Bodily Injury element of the Level 2 charge, as it would conflict with the Murder conviction.

*Sent. Tr.* at 10. The trial court agreed and entered a conviction and sentence for Level 3 felony robbery. Hamilton contends that the actual evidence presented

---

[4] Indiana Code section 35-42-5-1 was amended in 2017; however, those amendments made no substantive changes to this quoted language. *See* Pub. L. 202-2017, § 25.

to the trial court revealed an overlap between the actual evidence for Level 3 felony robbery and murder, and therefore, a double jeopardy violation remains.

[12] "The Double Jeopardy Clause is violated under the actual evidence test if there is a reasonable possibility that the evidentiary facts used by the fact-finder to establish the essential elements of one offense may also have been used to establish the essential elements of a second challenged offense." *Dilts v. State*, 49 N.E.3d 617, 630 (Ind. Ct. App. 2015), *trans. denied* (internal citations and quotations omitted). "Application of this test requires the court to 'identify the essential elements of each of the challenged crimes and to evaluate the evidence from the jury's perspective.'" *Lee v. State*, 892 N.E.2d 1231, 1234 (Ind. 2008) (quoting *Spivey v. State*, 761 N.E.2d 831, 832 (Ind. 2002)). In determining the facts used by the fact-finder, "it is appropriate to consider the charging information, jury instructions, and arguments of counsel." *Id*.

[13] As is pertinent to this appeal, Hamilton's information for Level 2 felony robbery charged:

> On or about the 14th day of August, 2016, in the County of Allen and in the State of Indiana, said defendant, Kevin Hamilton, did, *while armed with a deadly weapon*, knowingly or intentionally take property, from another person or presence of another person, to wit: Brian Quintana, by using or threatening the use of force, or by putting Brian Quintana in fear, said act resulting in serious bodily injury to Brian Quintana, to wit: death, being contrary to the form of the statute in such case made and provided.

*Appellant's App. Vol. II* at 17 (emphasis added). The trial court provided the jury with Final Instruction No. 4, regarding robbery:

> Before you may convict [Hamilton], the State must have proved each of the following beyond a reasonable doubt:
>
> 1. The Defendant, Kevin Hamilton,
>
> 2. *while armed with a deadly weapon*,
>
> 3. knowingly or intentionally,
>
> 4. took property from the person or presence of Brian Quintana,
>
> 5. by using or threatening the use of force or by putting Brian Quintana in fear,
>
> 6. and the commission of the offense resulted in serious bodily injury to Brian Quintana.

*Id.* at 104

[14]  Focusing on the element of injury, Hamilton contends it is impossible to murder somebody without inflicting serious bodily injury. *Appellant's Br.* at 16. He argues that, here, the essential element of "serious bodily injury" for Level 2 felony robbery was proven by the same evidence of killing that established

murder, and therefore, double jeopardy principles were violated.[5] *Id.* Hamilton asserts that, by extension, the essential element of "bodily injury" for Level 3 felony robbery could only have been proven by the same "bodily injury" of death. Hamilton concludes that, without evidence that Quintana sustained another injury, there is no independent evidence to support the critical element of "bodily injury" needed to prove Level 3 felony robbery.

[15] As noted above, Level 3 felony battery may be proven in one of two ways: (1) the robbery was committed *while armed with a deadly weapon*; or (2) the robbery resulted in bodily injury. I.C. § 35-42-5-1(a). We agree that double jeopardy principles would be violated if Hamilton was convicted of Level 3 felony robbery on the basis that it resulted in bodily injury; however, we find no such violation where, as here, he was convicted of committing robbery while armed with a deadly weapon.

[16] Hamilton maintains that the finding he committed the robbery while armed with a deadly weapon is "pure speculation." *Appellant's Br.* at 17. He argues that he did not fire the gun until he "had left the vehicle and had abandoned the attempt at Robbery. Furthermore, it could be argued that the serious bodily injury was caused by [Hamilton] and [Quintana] wrestling or [Yancey] struggling with [Quintana]." *Id.*

---

[5] By requesting that Hamilton be sentenced for the lesser included offense of Level 3 felony battery, which did not require "serious bodily injury," the State clearly recognized this issue.

[17]  We find Hamilton's argument unpersuasive.  Here, Hamilton's information charged that Hamilton committed robbery while armed with a deadly weapon. Final Instruction No. 4 advised the jury that, before Hamilton could be convicted of robbery as charged, the State had to prove, as one of the elements, that Hamilton committed the crime while armed with a deadly weapon. *Appellant's App. Vol. II* at 104.  In closing, the State addressed the jury, saying:

> Let's turn to the elements of robbery; again, they're in your packet, I'm not gonna go through each one and read them out. While armed with a deadly weapon.  Well, we know he had a gun on him; right?  He admitted that.  The text, [Yancey] says, "Hey, bring your gun."  He brought the gun.  His taped interview, he said he brought the gun, said it's a Smith and Wesson, it's a .9 millimeter handgun; right?  And what was his plan?  To get into that car, pull the gun, demand the marijuana. And he did, he said he did that, and [Quintana] fought back.  So we know he has a gun.

*Tr. Vol. 3* at 171.  Hamilton testified that he entered Quintana's car with a gun in hand, that Quintana saw the gun, and that Hamilton fired the gun through the rear window of Quintana's car.  It was at that time that Yancey stole the marijuana from Quintana.  There was sufficient evidence to support Hamilton's Level 3 felony robbery conviction on the basis that Hamilton used a gun in the commission of the robbery.  Under these circumstances, the trial court correctly remedied any potential double jeopardy problem by entering judgment on Count III as a Level 3 felony.

# III. Enhancement for use of a Firearm

[18]    Finally, Hamilton argues that the trial court committed reversible error when it allowed evidence regarding the Count IV enhancement to be presented to the jury at the same time the evidence was heard on the other counts.  Indiana Code section 35-50-2-11, in pertinent part, provides:

> (a) As used in this section, "firearm" has the meaning set forth in IC 35-47-1-5.
>
> (b) As used in this section, "offense" means:
>
> (1) a felony under IC 35-42 that resulted in death or serious bodily injury;
>
> . . . .
>
> (d) The state may seek, on a page separate from the rest of a charging instrument, to have a person who allegedly committed an offense sentenced to an additional fixed term of imprisonment if the state can show beyond a reasonable doubt that the person knowingly or intentionally used a firearm in the commission of the offense.
>
> . . . .
>
> (f) If the person was convicted of:
>
> (1) the offense under subsection (d);
>
> . . . .

in a jury trial, the jury shall reconvene to hear evidence in the
enhancement hearing. If the trial was to the court, or the
judgment was entered on a guilty plea, the court alone shall hear
evidence in the enhancement hearing.

Hamilton contends that since statutory procedure was not followed—the jury did not reconvene for the State to prove beyond a reasonable doubt that Hamilton used a gun—the trial court was precluded from enhancing his sentence.

[19] As support for his claim, Hamilton cites to language in *Sunday v. State*, 720 N.E.2d 716, 718 n.1 (Ind. 1999), saying: "[I]f the State desires an enhancement, it must follow the other requirements of the statute. If these requirements are not followed, the trial court is precluded from enhancing a sentence." *Sunday*, however, is easily distinguished from the facts in the instant case. In *Sunday*, our Supreme Court reversed a trial court's *sua sponte* enhancement of a rape conviction under Indiana Code section 35-50-2-11. *Id.* at 718. That statute "requires that the allegation that a firearm was used in the commission of the offense be filed on a separate page of the charging instrument and that the State prove it beyond a reasonable doubt." *Id.* at 719. In *Sunday*, the State had not charged the defendant with using a firearm in the commission of the rape on a separate page of the charging information as required by the statute and, in fact, had not alleged the enhancement in any fashion. Rather, at sentencing the State simply requested the maximum allowable sentence without mentioning the enhancement. Sunday had pleaded guilty pursuant to a plea agreement that provided for concurrent sentences on

two counts, with sentencing otherwise left to the trial court's discretion. *Id*. at 717. Sunday was sentenced to the maximum penalty of 50 years for rape, and the trial court enhanced the sentence by five years because Sunday had used a gun in the commission of the crime.

[20] On direct appeal to our Supreme Court, the Court reversed the trial court's determination to impose the enhancement to Sunday's sentence. Recognizing that Indiana Code section 35-50-2-11 allowed a sentence to be enhanced when the offense is committed by use of a firearm, our Supreme Court found it "clear that the legislature intended to require the State to seek . . . [the] enhancement by first filing its allegation on a separate page of the charging information." *Id*. at 719. Because the State did not comply, error was found, and the case was remanded with instructions to reduce the sentence by the amount of the enhancement.

[21] In contrast to *Sunday*, here, the State alleged on a separate page of the charging information that Hamilton knowingly or intentionally used a firearm in the commission of a felony under I.C. 35-42, that resulted in death or serious bodily injury. Hamilton does not contest that fact. Instead, he bases his claim on the following language in subsection (f) of the enhancement statute: "[I]n a jury trial, the jury shall reconvene to hear evidence in the enhancement hearing." I.C. § 35-50-2-11(f). Hamilton argues, "The process of having the jury determine the issue on Count IV in the main body of the jury trial was procedurally defective as the Court did not hold a bifurcated or separate hearing after the first jury determination of Counts I thru III. The Court failed to follow

the applicable procedures so the trial court is precluded from enhancing a sentence." *Appellant's Br*. at 19 (citing *Sunday*, 720 N.E.2d at 718 n.1).

[22] As Hamilton suggests, the "reconvening" language recognizes the need for a bifurcated proceeding where evidence of use of a handgun in the first phase of trial could prejudice the jury in its deliberation as to the defendant's guilt on those counts. *See Johnson v. State*, 544 N.E.2d 164, 168 (Ind. Ct. App. 1989) (trial court recognized need for bifurcated proceeding to keep evidence of prior conviction of battery from prejudicing jury before enhancement phase of trial), *trans. denied*. Here, there is no such concern of undue prejudice. In fact, the evidence required to prove that Hamilton murdered Quintana necessitated knowledge by the jury that Hamilton shot and killed him. Furthermore, Hamilton's defense to murder also required evidence that Hamilton had a firearm. During opening argument, defense counsel set forth his theory as follows:

> There is no question on the evidence that you're gonna hear in this trial that Brian Quintana died as a result of injuries as a result of single bullet [sic] that was recklessly fired into the back of an automobile, a bullet that struck the young man causing an injury that, in turn, caused his death; but the evidence will show that there was no plan to kill [Quintana], there was no intention to kill Brian, and that his death was not even a knowingly sought result.

*Tr. Vol. 2* at 131-32.

[23]     To prove its case, the State was required to present evidence that Hamilton possessed a firearm, and to prove his defense for murder, Hamilton was likewise required to prove that he possessed, but recklessly fired, a firearm. Thus the trial court did not err when it did not require the jury to reconvene for a bifurcated proceeding regarding the use of a handgun in the commission of the crime.

[24]     Affirmed.

[25]     Bailey, J., and Pyle, J., concur.